UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARIE POPE ) | |
| ) | |
| v. ) | |
| ) | NO. 3:09-cv-0245 |
| GENERAL DYNAMICS INFORMATION ) | JUDGE CAMPBELL |
| TECHNOLOGY, INC.; TAD ) | |
| TECHNICAL SERVICES ) | |
| CORPORATION; and ADECCO USA, ) | |
| INC. ) | |

MEMORANDUM

Pending before the Court is Defendants' Motion for Summary Judgment (Docket No. 16). For the reasons stated herein, Defendants' Motion is GRANTED in part and DENIED in part as follows.

FACTS

Plaintiff is a former employee of Defendants who has sued Defendants for employment discrimination under the Tennessee Human Rights Act ("THRA"), specifically sexual discrimination based on a hostile work environment, retaliatory harassment, constructive discharge and disparate treatment. Defendants removed this action from the Circuit Court for Davidson County, Tennessee, based upon diversity of citizenship.

Plaintiff's Complaint alleges that she was subjected to a pattern of repeated vulgar and sexually offensive comments, about which she allegedly complained to the highest ranking official on site. Plaintiff contends she was fired in retaliation for her complaints. Thereafter, Plaintiff asserts, she was allowed to return to work, but the sexual harassment continued. Being

1

left with no reasonable alternative, Plaintiff alleges, she was forced to leave her employment.

Defendants have moved for summary judgment on all of Plaintiff's claims.

## SUMMARY JUDGMENT

Summary Judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party.  *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007).  In order to defeat a summary judgment motion, the nonmoving party must provide more than a scintilla of evidence; that is, the nonmoving party must present evidence sufficient to permit a reasonable jury to find in its favor.  *Van Gorder*, 509 F.3d at 268.   Entry of summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id*.

An analysis of claims under THRA is the same as under Title VII of the Federal Civil Rights Act.  *Lynch v. City of Jellico, et al.*, 205 S.W.3d 384, 399 (Tenn. 2006).

## HOSTILE WORK ENVIRONMENT

Plaintiff avers that she was subjected to sexually degrading commentary and actions from Trey Davis, a supervisor, and Jessie Lord, a coworker. (Docket No. 20, pg.1).   Plaintiff claims Defendants made remarks both directed at her personally and in her vicinity. (Docket No. 17, p. 3).

2

Defendants admit to these actions and comments, however, they argue that although Davis and Lord made such comments, they made them "to and around other employees in the warehouse" and not just to Plaintiff. (Docket No. 17, p. 4). Additionally, Defendants argue that the comments were made both in and out of Plaintiff's presence, and therefore cannot be considered sexual harassment against Plaintiff. *Id.* To make out a hostile work environment claim, Plaintiff needs to show: (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment created a hostile work environment; and (5) employer liability. *Williams v. General Motors Corp.*, 187 F.3d 553, 561 (6th Cir. 1999). A hostile work environment is created "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). In determining whether the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment, a court must consider the totality of the circumstances. *Harris*, 510 U.S. at 23. In *Jackson v. Quanex Corp.,* 191 F.3d 654 (6th Cir. 1999), the court explained that "totality of the circumstances" meant that: (1) offensive conduct need not be directed at the plaintiff, *Id.* at 660; and (2) sexual animus can be inferred from conduct not overtly sexual in nature when the context suggests it. *Id.* at 662. In this case, many of the alleged harassing comments and actions *were* directed toward the Plaintiff personally and specifically. Examples include Davis jumping on Plaintiff's desk, acting like a stripper, pulling his pant legs up and saying, "you know you want some of this." (Docket No. 20, p. 4) and Lord asking Plaintiff if her husband ever "glued

3

her eyes shut," laughing and explaining the phrase means "when you're giving your husband a blow job and he pulls it out and shoots it in your eyes." *Id.*

Employer liability exists for the actions of co-workers in a hostile work environment case where the employer knew or should have known of the alleged conduct and failed to take prompt remedial action" such that the "employer tolerated or condoned the situation." *Davis v. Monsanto Chemical Co.*, 858 F.2d 345, 349 (6th Cir. 1988).

Defendants claim they prohibit harassment and discrimination in the workplace and have adopted anti-discrimination and anti-harassment policies. (Docket No. 17, pg.3)(averring "several mechanisms for workers to make complaints of perceived unfair treatment, including harassment, discrimination and retaliation, without fear of retaliation so that an investigation can be conducted and Defendants can take remedial action where deemed appropriate").

Plaintiff alleges she complained to three separate supervisors, including Don Knight, the warehouse manager. None of her complaints made their way to Human Resources, as was required by the anti-discrimination policy. It was not until Plaintiff was terminated that she personally contacted Human Resources and an investigation regarding her claims was launched. (Docket No. 17, p. 4).

Defendants have raised an affirmative defense under *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). Under *Faragher*, defendants may raise an affirmative defense comprised of two elements: (1) the employer exercised reasonable care to prevent and promptly correct any harassing behavior; and (2) the plaintiff failed to take advantage of any remedial opportunities provided by the employer. *Faragher*, 524 U.S. at 808. Defendants' argument that they had a reporting system in place to

4

deal with Plaintiff's allegations is not persuasive as an affirmative defense for purposes of Summary Judgment, as they did not make use of their own system when Plaintiff complained. Viewing the evidence in the light most favorable to the Plaintiff, the Court finds that she has raised a genuine issue of material fact as to whether she was subject to a hostile work environment at the hands of the Defendants. Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's hostile work environment claim is DENIED.

## RETALIATORY HARASSMENT AND CONSTRUCTIVE DISCHARGE

Plaintiff asserts the sexual comments and behavior did not stop after her reinstatement. She alleges she was given the "cold shoulder" and was being sabotaged at work in retaliation for her sexual harassment complaints. Plaintiff states that at one point, Davis moved a track-lock device to one of her desk drawers where personal items were normally kept and subsequently commented to the office that someone would get fired for misplacing the device. (Docket No. 20, p. 11). Additionally, Plaintiff alleges her email was being purposefully redirected as to interfere with her ability to perform her job and that she complained she had not been receiving her emails. *Id.*

To establish a claim of retaliatory harassment, Plaintiff must establish that (1) she engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action. *Hawkins v. Anheuser-Busch, Inc.,* 517 F.3d 321, 345 (6th Cir. 2008). Furthermore, an employer will be liable for the coworker's retaliatory actions if (1) the coworker's retaliatory conduct is sufficiently severe so as to dissuade a reasonable worker from making or supporting a charge of

5

discrimination, (2) supervisors or members of management have actual or constructive knowledge of the coworker's retaliatory behavior, and (3) supervisors or members of management have condoned, tolerated, or encouraged the acts of retaliation, or have responded to the plaintiff's complaints so inadequately that the response manifests indifference or unreasonableness under the circumstances. *Burlington Northern & Santa Fe Ry. v. White,* 548 U.S. 53, 68 (U.S. 2006).

In order to establish a claim for constructive discharge, Plaintiff must demonstrate that (1) Defendants deliberately created intolerable working conditions, as perceived by a reasonable person, and (2) Defendants did so with the intention of forcing Plaintiff to quit. *Logan v. Denny's, Inc.*, 259 F.3d 558, 568-69 (6th Cir. 2001). Factors to consider in determining whether a reasonable person would have felt compelled to resign include whether the actions of the employer involved (1) demotion, (2) reduction in salary, (3) reduction in job responsibilities, (4) reassignment to menial or degrading work, (5) reassignment to work under a younger supervisor, (6) badgering, harassment or humiliation by Defendant calculated to encourage plaintiff's resignation, or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *Id* at 569.

Plaintiff has raised a genuine issue of material fact concerning retaliatory harassment in a deliberate attempt by Defendants to create intolerable working conditions with the intent of forcing her to resign. While giving Plaintiff the "cold shoulder" is not likely to create an intolerable working condition, a reasonable person could perceive planting the track-lock device in Plaintiff's desk and redirecting her e-mail both raise an inference that her coworkers and supervisors were attempting to make it appear that Plaintiff was unable to do her job.

Defendants, moreover, are not entitled to Summary Judgment based on *Faragher* for the reasons stated previously regarding the hostile work environment claim. Accordingly, Defendants' Motion for Summary Judgment on the claims of retaliatory harassment and constructive discharge are DENIED.

## DISPARATE TREATMENT

Plaintiff claims she was discriminated against when she was given the assignment of cleaning duties for a year, at the exclusion of male employees. (Docket No. 20, p. 8). Furthermore, Plaintiff alleges that when she was given these duties, Knight told her "you are a female and you are good at it." Knight does not deny the statement, but Defendants argue Plaintiff asked for the cleaning duties. Id.

In order to make out a claim of disparate treatment under the THRA, Plaintiff must establish, among other things, that she suffered an adverse employment action as a result of her sex. The Tennessee Supreme Court has defined "adverse employment action" in the context of claims of discrimination as "a material and adverse change in the terms and conditions of employment." *Barnes v. Goodyear Tire and Rubber Co.,* 48 S.W. 3d 698, 707 (Tenn. 2000). An "alteration of job responsibilities" or a mere inconvenience is insufficient to sustain an actionable discrimination claim. *Id.; Frye v. St. Thomas Health Servs*., 227 S.W. 3d 595, 611 (Tenn. Ct. App. 2007). It is well established that "a purely subjective preference for one position over another" will not suffice. *Frye*, 227 S.W. 3d at 611.

Under the THRA, an adverse employment action sufficient to rise to the level of a discrimination claim includes, for example, termination of employment, demotion evidenced by a decrease in pay, a less distinguished title, a material loss of employment benefits, or a

7

significant reduction of material responsibilities. *Id*. at 611 (quoting *Barnes*, 48 S.W. 3d at 707). Although the assignment of cleaning duties exclusively to women can be discriminatory, Plaintiff has not carried her burden that her assigned cleaning duties constituted an adverse employment action in this case. Plaintiff's pay was not reduced, nor did she lose any employment benefits, nor did she suffer any reduction of material responsibilities. (Docket No. 17, pg. 9).

For these reasons, Defendant's Motion for Summary Judgment on Plaintiff's Disparate Treatment claim is GRANTED.

## CONCLUSION

For these reasons, Defendants' Motion for Summary Judgment (Docket No. 16) is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

*Todd Campbell*
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE